2013 DEC 23 AM 8:38


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SCOTT AKRIE, an individual and ) 
VOLCAN GROUP, INC., d/b/a ) DIVISION ONE
NETLOGIX, a California corporation, )
                                                    ) No. 68345-4-I
              Respondents, ) (Linked with No. 69300-0-I)
                                                    )
              v. )
                                                      ) PUBLISHED OPINION
JAMES GRANT and Jane Doe Grant, )
individually and the marital community )
composed thereof if any; KASSANDRA )
KENNAN and John Doe Kennan, )
individually and the marital community )
composed thereof if any; DAVIS )
WRIGHT TREMAINE, LLP, a )
Washington company; SEATTLE )
DEPOSITION REPORTERS, LLC, a )
Washington company; T-MOBILE USA, )
INC., a Delaware corporation, )
                                                    )
              Appellants. ) FILED: December 23, 2013
                                             )

DWYER, J. — Volcan Group, Inc., d/b/a NetLogix and Scott Akrie, chief

operating officer of NetLogix, (collectively "Akrie") sued James Grant, Cassandra

Kennan, Davis Wright Tremaine, LLP, Seattle Deposition Reporters, and T-

Mobile (collectively "Grant") for violation of the privacy act.[1] Grant moved to

strike the claims under the anti-SLAPP[2] statute[3] and moved to dismiss the suit.

The trial court held that the anti-SLAPP statute applied to Akrie's claim, granted

---

[1] Ch. 9.73 RCW.
[2] Washington Act Limiting Strategic Lawsuits Against Public Participation.
[3] RCW 4.24.525.

the motion to dismiss, and awarded statutory damages of $10,000 plus attorney fees to Grant. Grant appeals, asserting that the trial court erred by awarding only $10,000 in damages and insisting that the anti-SLAPP statute mandates a $10,000 award to each defendant. Grant is correct that the anti-SLAPP statute mandates a $10,000 award to each moving party who prevails on a motion to dismiss. Accordingly, we reverse the judgment of the superior court and remand the cause to that court with instructions to enter judgment for Grant in an amount that includes statutory damages of $50,000.

I

Scott Akrie is the chief operating officer of NetLogix, a company located in San Diego, California. NetLogix contracted with T-Mobile to provide "engineering, technical and auditing services to upgrade T-Mobile facilities in connection with its new 3G network." In 2010, NetLogix sued T-Mobile in the United States District Court, Western District of Washington, claiming breach of contract. James Grant[4] and Kennan, attorneys at Davis Wright Tremaine, LLP (DWT), represented T-Mobile in the federal action. While that action was pending, Jason Dillon, a former vice president of NetLogix, e-mailed James Grant and Kennan, offering to divulge to them information regarding the pending lawsuit.

On August 25, 2011, Dillon telephoned DWT offices to speak with James Grant and Kennan. James Grant told Dillon that his "assistant" Thad was

---

[4] For purposes of clarity, James Grant is referred to by his full name when discussed in his individual capacity.

- 2 -

present and would be taking notes during the call. In actuality, Thad Byrd was a certified court reporter employed by Seattle Deposition Reporters, and was transcribing the telephone call. During the call, Dillon revealed that NetLogix had destroyed evidence favorable to T-Mobile in the contract dispute. Dillon telephoned DWT offices again on September 16 to speak with James Grant and Kennan. As before, an employee of Seattle Deposition Reporters transcribed this telephone call.

Thereafter, in the federal action, T-Mobile filed a motion to dismiss for spoliation of evidence based on the statements provided by Dillon in the August 25 and September 16 telephone calls. In support of the motion, T-Mobile filed portions of the transcripts of Dillon's telephone calls.[5]

Akrie then brought this action in King County Superior Court asserting that the recording and dissemination of Dillon's telephone conversations in federal court violated Washington's privacy act. Akrie asserted that the recording and dissemination of Dillon's telephone conversations caused injury to its "business, person and reputation" and sought damages for the alleged violations. Grant filed a motion to strike pursuant to Washington's anti-SLAPP statute and a motion to dismiss pursuant to CR 12(b)(6), alleging that Akrie lacked standing to bring the privacy act claim.

---

[5] Included in the record on appeal are Dillon's motion in federal court to compel production of the transcripts in their entirety, and NetLogix's opposition motion to T-Mobile's motion to dismiss. No information regarding the further disposition of the federal case appears in our record. However, the published federal court order reveals that the federal court did not hold the hearing on T-Mobile's motion until February 16, 2012, seven days after the superior court's judgment was entered in this case. See Volcan Group, Inc v. T-Mobile USA, Inc., 940 F.Supp.2d 1327 (W.D. Wash. 2012).

The trial court held that because Akrie's action involved the submission of evidence of alleged spoliation in a federal court action, Grant had established by a preponderance of the evidence that the claim was based on an action involving public participation and petition. The trial court further held that, for three reasons, Akrie failed to establish, by clear and convincing evidence, a probability of prevailing on the merits.[6] First, the trial court held that "the filings in Federal Court are immune. You cannot sue based on filing the transcripts with the Federal Court." Second, the trial court held that Akrie lacked standing to assert that the recording of the telephone calls constituted a violation of the privacy act, as it was not a participant in either telephone conversation. Third, the trial court held that the privacy act does not protect against dissemination of recordings. Ultimately, the trial court held that the anti-SLAPP statute applied to Akrie's claims and granted all five defendants' joint motion to dismiss. The trial court awarded the defendants $10,000 in total statutory damages and $20,137.45 in attorney fees and costs.

Akrie appealed the dismissal of its suit. Grant cross-appealed, asserting that each named defendant was entitled to an award of $10,000, for a total award of $50,000 in statutory damages. Akrie subsequently abandoned its appeal and this court redesignated Grant as Appellants.

---

[6] "A moving party bringing a special motion to strike a claim under this subsection has the initial burden of showing by a preponderance of the evidence that the claim is based on an action involving public participation and petition. If the moving party meets this burden, the burden shifts to the responding party to establish by clear and convincing evidence a probability of prevailing on the claim." RCW 4.24.525(4)(b).

II

Grant contends that the trial court erred by awarding only $10,000 in statutory damages.[7] This is so, Grant asserts, because the anti-SLAPP statute mandates a $10,000 award to each prevailing party on a motion to dismiss. We agree.

We review issues of statutory interpretation de novo. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

> A court's goal in construing a statute is to determine and give effect to the legislature's intent. Lake, 169 Wn.2d at 526; Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If the statute's meaning is plain on its face, we give effect to that plain meaning as the expression of what was intended. Campbell & Gwinn, 146 Wn.2d at 9-10. "The plain meaning of a statute may be discerned 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting Campbell & Gwinn, 146 Wn.2d at 11). We look to "'the ordinary meaning of the language at issue, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole.'" Lake, 169 Wn.2d at 526 (quoting State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)).

TracFone Wireless, Inc. v. Dep't of Revenue, 170 Wn.2d 273, 281, 242 P.3d 810 (2010).

In 2010, the legislature amended the anti-SLAPP statute by enacting RCW 4.24.525 to address "lawsuits brought primarily to chill the valid exercise of

---

[7] In enacting RCW 4.24.525, the legislature stated that one of the purposes of the statute is to "[p]rovide for attorneys' fees, costs, and *additional relief* where appropriate." Laws of 2010, ch. 118, § 2(c) (emphasis added). Additionally, Washington's original anti-SLAPP statute provides that a party who establishes immunity from liability "shall receive *statutory damages* of ten thousand dollars." RCW 4.24.510 (emphasis added). Hence, we refer to the $10,000 award under RCW 4.24.525 as "statutory damages."

the constitutional rights of freedom of speech and petition for the redress of grievances." Laws of 2010, ch. 118, § 1(a). The amended anti-SLAPP statute provides the following remedy:

> (6)(a) The court shall award to a moving party who prevails, in part or in whole, on a special motion to strike made under subsection (4) of this section, without regard to any limits under state law:
>
> (i) Costs of litigation and any reasonable attorneys' fees incurred in connection with each motion on which the moving party prevailed;
>
> (ii) An amount of ten thousand dollars, not including the costs of litigation and attorney fees; and
>
> (iii) Such additional relief, including sanctions upon the responding party and its attorneys or law firms, as the court determines to be necessary to deter repetition of the conduct and comparable conduct by others similarly situated.

RCW 4.24.525(6)(a). "Moving party" is defined as "a person on whose behalf the motion described in subsection (4) of this section is filed seeking dismissal of a claim." RCW 4.24.525(1)(c).

We have never before interpreted RCW 4.24.525(6)(a). Nonetheless, the language of the statute is plain and unambiguous. "In the absence of a specific statutory definition, words in a statute are given their common law or ordinary meaning." State v. Chester, 133 Wn.2d 15, 22, 940 P.2d 1374 (1997); accord Hunter v. Univ. of Wash., 101 Wn. App. 283, 290-91, 2 P.3d 1022 (2000). When the word "shall" appears in a statute, it is "presumptively imperative and operates to create a duty." Erection Co. v. Dep't of Labor & Indus., 121 Wn.2d 513, 518, 852 P.2d 288 (1993) (citing Crown Cascade, Inc. v. O'Neal, 100 Wn.2d 256, 261, 668 P.2d 585 (1983); State v. Q.D., 102 Wn.2d 19, 29, 685 P.2d 557 (1984)).

"The word 'shall' in a statute thus imposes a mandatory requirement unless a contrary legislative intent is apparent." Erection Co., 121 Wn.2d at 518 (citing State v. Bryan, 93 Wn.2d 177, 183, 606 P.2d 1228 (1980)).

No contrary legislative intent is apparent in the anti-SLAPP statute. In amending the anti-SLAPP statute, the legislature stated, "This act shall be applied and construed liberally to effectuate its general purpose of protecting participants in public controversies from an abusive use of the courts." Laws of 2010, ch. 118, § 3. Moreover, the legislature had previously adopted a similar view when it added a $10,000 statutory damage award to the original anti-SLAPP statute—testimony in support of that amendment advanced the view that "[t]he award of costs, reasonable attorneys' fees, and expenses can prevent voices from being silenced." S.B. REP. on H.B. 2699, 57th Leg., Reg. Sess. (Wash. 2002). These statements support, rather than contradict, a reading of the statute which makes the statutory damage award mandatory. Therefore, the word "shall" in the remedy provision of the anti-SLAPP statute operates to create a duty upon the trial court to award $10,000 in statutory damages to "a person on whose behalf the motion . . . is filed," who thereafter prevails on that motion. Thus, all persons who prevail on an anti-SLAPP motion filed on their behalf are entitled to the statutory damage award.[8]

---

[8] We are not called upon to address whether the mandatory statutory damage award may be unconstitutional as applied in a case involving a large number of defendants. Due process principles do not limit statutory damages. Perez-Farias v. Global Horizons, Inc., 175 Wn.2d 518, 533-34, 286 P.3d 46 (2012). However, an extraordinarily large damage award might violate the plaintiff's right to petition under the First Amendment. The legislature explicitly recognized that this right is implicated by the anti-SLAPP statute, as it stated that one purpose of the statute is to "[s]trike a balance between the rights of persons to file lawsuits and to trial by jury

Here, the five defendants collectively filed an anti-SLAPP motion seeking dismissal of all of Akrie's claims. Given that the motion was filed on behalf of all five defendants and that all five defendants prevailed when Akrie's suit was dismissed, all five defendants were entitled to an award of $10,000 in statutory

---

and the rights of persons to participate in matters of public concern." Laws of 2010, ch. 118, § 2(a).

Generally, the first amendment right to petition and the first amendment right of free speech are subject to the same constitutional analysis. In re Marriage of Meredith, 148 Wn. App. 887, 896, 201 P.3d 1056 (2009); see also Campbell v. PMI Food Equip. Grp., Inc., 509 F.3d 776, 789 (6th Cir. 2007); Gunter v. Morrison, 497 F.3d 868, 872 (8th Cir. 2007). Baseless or frivolous litigation is not protected by the First Amendment. Bill Johnson's Rests., Inc. v. Nat'l Labor Relations Bd., 461 U.S. 731, 743, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983); Reid v. Dalton, 124 Wn. App. 113, 126, 100 P.3d 349 (2004). However, the anti-SLAPP statute does not sanction and frustrate only claims that are frivolous. Rather, the statute mandates dismissal of all claims based on protected activity where the plaintiff cannot prove by clear and convincing evidence a probability of prevailing on the merits. RCW 4.24.525(4)(b). "A frivolous action is one that cannot be supported by any rational argument on the law or facts." Rhinehart v. Seattle Times, 59 Wn. App. 332, 340, 798 P.2d 1155 (1990). "But the fact that the complaint ultimately does not prevail is not dispositive" of frivolity. Hous. Auth. of City of Everett v. Kirby, 154 Wn. App. 842, 859, 226 P.3d 222 (2010), rev'd on other grounds by Hous. Auth. of City of Seattle v. Bin, 163 Wn. App. 367, 260 P.3d 900 (2011). A claim may be dismissed on summary judgment without being frivolous. See e.g., Holland v. City of Tacoma, 90 Wn. App. 533, 546, 954 P.2d 290 (1998). As the second step of the anti-SLAPP analysis is akin to summary judgment, Gerbosi v. Gaims, Weil, West & Epstein, LLP, 193 Cal.App.4th 435, 444, 122 Cal.Rptr.3d 73 (Cal.App. 2 Dist., 2001), a claim may thus also be dismissed on an anti-SLAPP motion without being frivolous. Indeed, analyzing whether the burden to prove the claim by "clear and convincing evidence" has been met is vastly different from an inquiry into frivolity. Accordingly, it is clear that the anti-SLAPP statute sweeps into its reach constitutionally protected first amendment activity.

The anti-SLAPP statute exacts a content-based restriction on the right to petition, as it imposes a $10,000 statutory damage award only on those suits that are "based on an action involving public participation and petition." RCW 4.24.525(4)(a). As the first amendment right to petition and the first amendment right of free speech are generally subject to the same constitutional analysis, the standards applicable to regulation of content-based speech are equally applicable to the right to petition. See Meredith, 148 Wn. App. at 896; see also Campbell, 509 F.3d at 789; Gunter, 497 F.3d at 872. "[A]ny statute that purports to regulate such [protected first amendment activity] based on its content is subject to strict scrutiny." Rickert v. Pub. Disclosure Comm'n, 161 Wn.2d 843, 848, 168 P.3d 826 (2007). Under the strict scrutiny standard, a statute that burdens the right to petition is only valid if it "'is necessary to serve a compelling state interest and . . . is narrowly drawn to achieve that end.'" Rickert, 161 Wn.2d at 843 (internal quotation marks omitted) (quoting Burson v. Freeman, 504 U.S.191, 198, 112 S. Ct. 1846, 119 L. Ed. 2d. 5 (1992)); see also In re R.H., 170 Cal.App.4th 678, 702, 88 Cal.Rptr.3d 650 (Cal.App. 5 Dist., 2009) ("No doubt, any impairment of the right to petition must be narrowly drawn."). Whether and at what point a cumulative award of statutory damages that is vastly out of proportion to the relief sought in the underlying lawsuit ceases to be narrowly tailored to achieving the compelling state interests furthered by the anti-SLAPP statute is a question that we leave for another day.

damages. As this provision is mandatory, the trial court did not have the discretion to make only one $10,000 statutory damage award.

Akrie avers that the trial court did not err because the trial court granted the anti-SLAPP motion only as to T-Mobile's claim and dismissed the other defendants' claims under CR 12(b)(6). Akrie's contention is not supported by the record. In both its oral ruling and its written order, the trial court stated that the "defendants" established that Akrie's suit was based on their actions involving public participation and petition. The trial court's order states, "Defendants' motion is granted in its entirety." At no point did the trial court differentiate between the defendants. Thus, the trial court erred by not awarding $10,000 to each defendant. On remand, the trial court should enter judgment in favor of Grant in an amount that includes statutory damages of $50,000.[9]

Reversed.

We concur:

---

[9] We do not disturb the trial court's award of attorney fees and costs. Grant does not seek additional fees on appeal.

- 9 -